**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Paul Johnson,<br><br>                Plaintiff,<br><br>v.<br><br>Federal Express Corporation,<br><br>                Defendant. | No. CV-14-02428-PHX-DGC<br><br>**ORDER** |

      Plaintiff Paul Johnson brings suit against Defendant Federal Express Corporation ("FedEx" or "Defendant"). Plaintiff claims that FedEx retaliated against him and constructively discharged him in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e; the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621; and 42 U.S.C. § 1981. Doc. 15. FedEx moves to dismiss all claims pursuant to Rule 12(b)(6) because (1) Plaintiff's § 1981 claims are barred by the statute of limitations, (2) Plaintiff has failed to exhaust his administrative remedies, (3) Plaintiff has failed to state a claim for retaliation, and (4) Plaintiff has failed to state a claim for constructive discharge. Doc. 17. Plaintiff has filed a response and request for leave to amend if necessary. Doc. 20. The Court will deny Defendant's motion.

**I.    Background.**

      Plaintiff alleges the following facts, which are assumed true for the purposes of this motion. FedEx hired Plaintiff on July 20, 1981. Doc. 15, ¶ 6. Plaintiff remained

employed by FedEx until February 25, 2014. *Id.* During his employment, Plaintiff held various positions including courier, operations manager, senior manager, and dispatch senior manager. *Id.*, ¶ 7. FedEx named Plaintiff either "Manager of the Year" or "Senior Manager of the Year" on twelve occasions between 1992 and 2010. *Id.*, ¶¶ 8, 10. In 2005, FedEx awarded Plaintiff the highest honor a FedEx Senior Manager can receive, the "Five Star Award." *Id.*, ¶ 9.

Plaintiff worked as the senior manager of the DGLA station in Tempe, Arizona, from June 2003 until the DGLA station closed in June 2009. *Id.*, ¶¶ 12, 13. Although Plaintiff was the senior manager at the station, FedEx did not inform Plaintiff about plans to close the DGLA station until four months after they had informed Plaintiff's DGLA station coworkers. *Id.*, ¶ 14. FedEx's delay in informing Plaintiff of DGLA's closure prevented Plaintiff from applying for two job openings in the Phoenix area that would have kept Plaintiff from having to relocate and move away from his family. *Id.*, ¶¶ 15-16. In February of 2009, when Plaintiff was informed of FedEx's plans to close DGLA, Plaintiff was 50 years old and one of five senior managers in the Phoenix area. *Id.*, ¶¶ 13, 18. At that time, Plaintiff had the most tenure among Phoenix area senior managers, but Plaintiff was the only senior manager forced to relocate. *Id.*, ¶ 20.

FedEx gave Plaintiff the option to either relocate to the LASA station in Las Vegas, or be "displaced" and have 90 days to secure a position at FedEx or have his employment terminated. *Id.*, ¶ 24-25. Plaintiff chose to relocate to LASA station. *Id.*, ¶ 26. In March 2009, Plaintiff filed an internal complaint with FedEx's equal employment opportunity ("EEO") office because he believed his age and race were factors in the decision to require only Plaintiff's relocation among the Phoenix area senior managers. *Id.*, ¶¶ 27-28, 33.

Upon learning that Plaintiff was transferring to the LASA station, Canyon District managing director Raffi Arzoumanian called Plaintiff to express his anger that Plaintiff applied for and received the LASA senior manager position. *Id.*, ¶ 29. Arzoumanian told Plaintiff that Arzoumanian and FedEx vice president Glen Corbin would scrutinize every

decision Plaintiff made. *Id.*, ¶ 31. Shortly after Plaintiff started at LASA, Arzoumanian met with Plaintiff and told him that "filing an EEO was the biggest mistake you ever made." *Id.*, ¶ 32.

In July 2009, Plaintiff filed a complaint with the Equal Employment Opportunity Commission – the first of four Plaintiff would file against FedEx – alleging that his age and race were the reasons Plaintiff was the only senior manager in the Phoenix area who was forced to relocate. *Id.*, ¶¶ 33, 36. For the remainder of Plaintiff's career with FedEx, Arzoumanian retaliated against Plaintiff through adverse actions that included threatening and abusive phone calls, unsubstantiated "Documented Counselings," actions to prevent Plaintiff from promoting or transferring to positions that were closer to his family in Phoenix, and "taking actions that made Plaintiff's working conditions so intolerable that a reasonable person in Plaintiff's shoes would have felt compelled to resign." *Id.*, ¶¶ 33-34. As a result of these retaliatory actions, Plaintiff was forced in July of 2009 to file an internal harassment claim against Arzoumanian and to go on medical leave due to stress. *Id.*, ¶ 35.

In January 2010, Plaintiff's doctors released him to return to work. *Id.*, ¶ 37. Plaintiff accepted an operations manager position at the ADSA station in Addison, Texas because FedEx had no senior manager or operations manager openings in Arizona. *Id.*, ¶ 38. After starting at the ADSA station, FedEx informed Plaintiff that his salary would be reduced by approximately $4,300 per year – a decision Plaintiff alleges was influenced by Arzoumanian. *Id.*, ¶¶ 39-43. Plaintiff remained at the ADSA station from February 2010 until October 2010, during which time Plaintiff again was named "Manager of the Year" and received a 3.9 of a possible 4.0 on his annual review. *Id.*, ¶¶ 45-46.

In September 2010, Plaintiff requested and received permission to apply for transfer positions closer to Phoenix in order to better cope with his anxiety disorder that intensifies when he is away from his family – labeled a "hardship transfer" by FedEx. *Id.*, ¶¶ 17, 47-50. FedEx had no lateral openings in the Phoenix area at that time, so Plaintiff accepted an operations manager position at FLGA station in Flagstaff, Arizona.

*Id.*, ¶ 51.  All positions at FLGA station ultimately reported to Arzoumanian. *Id.*, ¶ 52. When Arzoumanian learned that Plaintiff applied for a transfer to the FLGA station, Arzoumanian called FLGA station management to ask if they could do without a new operations manager, but was told they could not. *Id.*, ¶¶ 53-54. Plaintiff was placed in the position in October 2010.  *Id.*, ¶ 54.  Shortly thereafter, Arzoumanian made an unannounced visit in which he refused to acknowledge Plaintiff and told Plaintiff's direct supervisor, Bill Falshaw, "Bill, you're not the problem here, [Plaintiff] is." *Id.*, 55-56.

In November of 2011, Plaintiff requested and received another "hardship transfer." *Id.*, ¶ 57.  During the 90-day window provided by the "hardship transfer" to apply for transfer positions, Plaintiff applied for at least three openings in the Phoenix area – two lateral positions posted by Arzoumanian and one lower level position.  *Id.*, ¶¶ 58-59, 60, 72.  Plaintiff was not selected to interview for any of the openings despite having "substantially greater credentials" than the candidates who were ultimately selected. *Id.*, ¶¶ 58-77.  After Arzoumanian did not interview Plaintiff for the first lateral position opening he applied for – senior manager at the ZYSA station – Plaintiff filed a complaint under FedEx's Guaranteed Fair Treatment Procedure ("GFTP") alleging that Arzoumanian discriminated against him based on his race and age, and retaliated against him for filing prior EEO and EEOC complaints. *Id.*, ¶ 68.

In January 2012, Plaintiff filed a second complaint against Arzoumanian under the GFTP alleging discrimination based on race, age, and retaliation because Arzoumanian did not interview Plaintiff for the second lateral position he applied for – operations manager at the ZYSA station. *Id.*, ¶ 78.  After the second complaint, a FedEx human resources advisor contacted Plaintiff.  *Id.*, ¶ 79.  The advisor told Plaintiff his January 2012 complaint would be considered alongside his November 2011 complaint, and advised Plaintiff to withdraw the January 2012 complaint. *Id.*, ¶¶ 79-80.

Plaintiff asserts that Arzoumanian persuaded the FedEx advisor to contact Plaintiff and ask him to withdraw his January 2012 complaint. *Id.*, ¶ 81.  Plaintiff also asserts that FedEx failed to follow its own GFTP policy because, at Arzoumanian's behest, it did not

place the contested hiring selections on hold until after Plaintiff's GFTP complaints were resolved. *Id.*, ¶¶ 69-71, 82. Plaintiff claims that FedEx acknowledged it failed to follow its GFTP policy, but did not remedy the violation by transferring Plaintiff to a Phoenix area salaried position. *Id.*, ¶¶ 82-92.

In March 2012, after FedEx denied Plaintiff an interview or placement for either of the ZYSA station openings, Plaintiff filed his second EEOC charge alleging discrimination based on age and race.[1] *Id.*, ¶ 93. In retaliation of this protected action, Arzoumanian assigned Plaintiff a work productivity rate requirement that was twice as high as the work productivity rate requirement given to any other operations manager and which was impossible to achieve. *Id.*, ¶¶ 94-101. In October 2012, Plaintiff filed his third EEOC charge alleging that he was retaliated against when Arzoumanian imposed the unrealistic work standards.[2] *Id.*, ¶ 102.

Between October 2012 and May 2013, FedEx passed over Plaintiff twice more for lateral position openings in the Phoenix area. *Id.*, ¶¶ 103-13. In May 2013, Plaintiff filed a third GFTP complaint against Arzoumanian alleging that he was discriminated and retaliated against based on his age and race. *Id.*, ¶ 114. In response, FedEx appointed Arzoumanian to preside over Plaintiff's GFTP complaint – a violation of FedEx GFTP policy. *Id.*, ¶ 115. When Plaintiff asked FedEx to allow someone else to preside over his GFTP complaint, FedEx refused and Plaintiff withdrew his complaint. *Id.*, ¶¶ 116-17.

In July 2013, Plaintiff went back on medical leave to treat his stress. *Id.*, ¶ 118. In February 2014, Plaintiff learned that FedEx had five part-time openings at the SCFA station in the Phoenix area. *Id.*, ¶ 119. Plaintiff inquired about applying for one of these openings, but was told that no such openings existed. *Id.*, ¶ 122. On February 25, 2014, Plaintiff "resigned/retired" from FedEx. *Id.*, ¶ 125. In March 2014, FedEx hired five part-time drivers for the SCFA station from outside of the company. *Id.*, ¶¶ 123-24. In August 2014, Plaintiff filed his fourth EEOC charge alleging that FedEx retaliated

---

[1] Charge No. 540-2012-01297 ("March 2012 Charge").

[2] Charge No. 540-2012-03178 ("October 2012 Charge").

against him by not allowing him to apply or interview for the part time driver positions.[3] *Id.*, ¶ 126.

On August 29, 2014, the EEOC issued Plaintiff a right to sue letter for his August 2014 EEOC charge. *Id.*, ¶ 127. On September 5, 2014, the EEOC issued Plaintiff a right to sue letter for both his March 2012 EEOC Charge and his October 2012 EEOC charge. *Id.*, ¶¶ 128-29. On October 31, 2014 Plaintiff filed this action. Doc. 1. Plaintiff amended his complaint on February 2, 2015. Doc. 15.

## II.   Legal Standard.

When analyzing a complaint for failure to state a claim for relief under Rule 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009), and are insufficient to defeat a motion to dismiss for failure to state a claim, *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010). To avoid a Rule 12(b)(6) dismissal, the complaint must plead enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## III.   Analysis.

### A.   Time Bar Arguments.

FedEx argues that "Plaintiff's allegations arising out of his 'forced move out of Arizona' are barred by Section 1981's four year statute of limitations." Doc. 17 at 6-7. Additionally, FedEx asserts that Plaintiff's Title VII and ADEA claims arising out of his

---

[3] Charge No. 540-2014-02702 ("August 2014 Charge").

employment in Texas and his reduction in salary from January or February 2010 are barred because Plaintiff failed to file an EEOC Charge of discrimination within 300 days. *Id.* at 7. In response, Plaintiff states that only the allegations set forth in the March 2012 Charge, October 2012 Charge, and August 2014 Charge are at issue in this action. He does not assert as claims the events identified by FedEx as untimely. Doc. 20 at 6-7.

Plaintiff argues that the events occurring prior to the three EEOC charges mentioned above, including the relocation after the DGLA station was closed and the reduction in pay, are included in his complaint to show a pattern of retaliatory actions by Arzoumanian, and support an inference that adverse employment actions later suffered by Plaintiff were in retaliation for Plaintiff's protected activities. *Id.* at 6 n.1, 12-13. Plaintiff is permitted to use information of prior acts in support of his current timely action. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (although a discrete discriminatory or retaliatory act is not actionable if time barred, the statute does not bar a party from using prior acts as background evidence in support of a timely claim). The Court will deny FedEx's motion to dismiss these allegations, but will proceed with the understanding that they do not purport to set forth claims. The claims in this case are limited to those asserted in the March 2012 Charge, October 2012 Charge, and August 2014 Charge.

**B.     Failure to State a Claim for Retaliation.**

Title VII "prohibits retaliation against an employee 'because he has opposed any practice made an unlawful employment practice'" by Title VII. *Nelson v. Pima Cmty. College*, 83 F.3d 1075, 1082 (9th Cir. 1996) (quoting 42 U.S.C. § 2000e-3(a)). A plaintiff makes a prima facie case of unlawful retaliation by producing evidence that (1) he engaged in activity protected by Title VII, (2) the employer subjected him to a materially adverse action, and (3) there was a causal link between the protected activity and the adverse action. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006); *Vasquez v. Cnty. of L.A.*, 349 F.3d 634, 642 (9th Cir. 2004); *Lyons v. England*, 307 F.3d 1092, 1118 (9th Cir. 2002).

FedEx concedes that Plaintiff engaged in protected activity by filing EEOC charges of discrimination. Doc. 17 at 7-8. FedEx argues, however, that Plaintiff has failed to show either a materially adverse employment action or a causal link between the protected activity and the adverse employment action. *Id.* at 8.

An employment action is materially adverse if "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *White*, 548 U.S. at 57; *see also Ray*, 217 F.3d at 1243. Courts have held that denial of a promotion can be an adverse employer action. *See Burlington Indus. v. Ellerth*, 524 U.S. 742, 761; *Ray*, 217 F.3d at 1241-42. Plaintiff alleges that FedEx denied him promotional, lateral transfer, and lower-level transfer opportunities in retaliation of his protected acts. Doc. 15, ¶¶ 51-56, 58-77, 119-125. The Court finds these alleged facts sufficient to show a materially adverse employment action.

Plaintiff must also show a causal link between his protected activity and the adverse employment action. The Supreme Court has held that Title VII retaliation claims "must be proved according to traditional principles of but-for causation, not the lessened causation test stated in § 2000e-2(m)." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2533 (2013). "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id*. Plaintiff alleges that Arzoumanian told him in 2009 that "filing an EEO was the biggest mistake you ever made." Doc. 15, ¶¶ 27, 28, 32. Plaintiff alleges that Arzoumanian subsequently prevented Plaintiff from being promoted or transferring to positions near his family in Phoenix (*id.*, ¶¶ 60-71, 72-82, 103-13, 119-24); posted a number of these positions for which Plaintiff was not selected or interviewed (*id.*, ¶¶ 60, 72); attempted to eliminate a job for which Plaintiff *had* been selected (*id.*, ¶¶ 51-53); and influenced a number of FedEx's other adverse actions against Plaintiff including the decision to disregard their own internal policies on multiple occasions (*id.*, ¶¶ 78-129). These allegations are sufficient to satisfy the "but-for" causation requirement established by the Supreme Court in *Nassar*. *See* 133 S.Ct at 2533.

Because Plaintiff has sufficiently pled the elements of a retaliation claim under Title VII, the ADEA, and § 1981, the Court will deny Defendant's motion to dismiss.

### C. Failure to State a Claim for Constructive Discharge.

FedEx argues that Plaintiff has failed to state a claim for constructive discharge. Doc. 17 at 11-13. "Constructive discharge occurs when, looking at the totality of the circumstances, a reasonable person in the employee's position would have felt that he was forced to quit because of intolerable and discriminatory working conditions." *Wallace v. City of San Diego*, 479 F.3d 616, 625 (9th Cir. 2007) (citation and alterations omitted). "'Whether working conditions were so intolerable and discriminatory as to justify a reasonable employee's decision to resign is normally a factual question for the jury.'" *Id.* at 626 (citation omitted). The Ninth Circuit has held that a constructive discharge claim can be shown through a continuous pattern of discriminatory treatment over months and years. *See Satterwhite v. Smith*, 744 F.2d 1380, 1382 (9th Cir. 1984) (finding that evidence a black employee could not obtain promotion or gain access to training and advancement opportunities that white employees received was sufficient to support a claim of constructive discharge); *Watson v. Nationwide Ins. Co.*, 823 F.2d 360, 361 (9th Cir. 1987) (an alleged pattern of discriminatory actions by an employer was sufficient to survive a motion for summary judgment).

Plaintiff has alleged sufficient facts to show that a reasonable person in his position would have felt forced to quit because of intolerable working conditions. Defendant's motion to dismiss the claim for constructive discharge will be denied.

**IT IS ORDERED:**

1. Defendant's motion to dismiss (Doc. 17) is **denied**.
2. Plaintiff's request for leave to amend (Doc. 20) is **denied** as moot.

Dated this 15th day of April, 2015.

David G. Campbell
United States District Judge

- 9 -