**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Paul Johnson, | No. CV-14-02428-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Federal Express Corporation, | |
| Defendant. | |

Plaintiff Paul Johnson asserts claims against Federal Express Corporation ("FedEx") for retaliation and constructive discharge in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.* ("Title VII"), and 42 U.S.C. § 1981. Doc. 15. FedEx moves for summary judgment, Docs. 95, and Johnson moves for partial summary judgment on the failure-to-mitigate defense. Doc. 99. The motions are fully briefed, Docs. 98, 101, 106, 108, 109, and the Court concludes that oral argument will not aid in its decision.[1] For the reasons that follow, FedEx's motion will be granted in part and denied in part, and Johnson's motion will be denied.

---

[1] Johnson's request for oral argument is therefore denied. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

I.      **Background.**

Johnson began his employment with FedEx in 1981, when the company hired him as a part-time courier.  Doc. 100-1 at 4.  In 1990, FedEx promoted Johnson to operations manager for the Phoenix station.  *Id.* at 6.  In 1993, he was promoted to senior manager. *Id.* at 8.[2]  In early 2009, Johnson's station was closed and he was informed that he would need to transfer to Las Vegas if he wished to remain in a management position. Doc. 107-1 at 5, ¶ 9.  In March 2009, Johnson filed an internal Equal Employment Opportunity ("EEO") complaint, alleging that the closure of his station constituted discrimination based on race and age, or retaliation for his filing of another EEO complaint in 2003.  *See* Doc. 97-2.  After an extensive inquiry, FedEx concluded that these allegations were unsubstantiated and that the decision to close Johnson's station was made for legitimate business reasons.  *Id.* at 15-16.

Johnson elected to take a senior manager position in Las Vegas.  Docs. 96-2 at 6; 96-3 at 11.  Johnson contends that FedEx began retaliating against him shortly after he accepted this position, with Dr. Raffi Arzoumanian, Managing Director for the Canyon District, engaging in most of the retaliatory conduct.[3]  Johnson testified that Arzoumanian began making "derogatory remarks" towards him, warned him that his every decision would be scrutinized, and told him that "[f]iling an EEO is the biggest mistake you ever made."  Docs. 96-1 at 30; 107-1 at 5, ¶ 11.  Arzoumanian also initiated counseling sessions with Johnson on June 15 and July 6, 2009.  Doc. 96-3 at 21, 27.  Following the second session, Arzoumanian issued a memorandum to Johnson stating that "[f]urther instances of leadership failures will be considered conduct issues and will result in discipline up to and including termination."  Doc. 96-3 at 27.  Johnson filed a charge of discrimination with the EEOC, alleging that the counseling sessions constituted retaliation for his filing of an internal complaint.  Doc. 107-1 at 5-6, ¶ 13.

---

[2] At FedEx, operations managers report to senior managers, who in turn report to managing directors.

[3] The Canyon District includes Arizona and Nevada.

1    Johnson went on medical leave on July 21, 2009.  Doc. 107-1 at 257.  While on
2    leave, his position was eliminated.  *Id.*   Thereafter, Johnson accepted an operations
3    manager position in Addison, Texas, although this was a step below his previous position
4    as senior manager.  *Id.* at 5-6, ¶¶ 6, 14.  The job offer listed a monthly salary of $7,453,
5    but after Johnson relocated to Texas in reliance on the offer, FedEx provided him with a
6    revised job offer reducing his monthly pay to $7,095.  *Id.* at 6, ¶¶ 14, 17-18.  Johnson's
7    human resources representative, Gail Davis, testified that she made the salary error
8    without any knowledge of Johnson's protected activities and that Arzoumanian was not
9    responsible for the error.  Doc. 97-3 at 3-4, ¶ 6.

10    In September 2010, Johnson obtained approval for a personal emergency transfer
11    to the Phoenix area, and applied for an operations manager position in Flagstaff under
12    Senior Manager Jose Corrales.  Doc. 97-4 at 5.  Arzoumanian attempted to prevent
13    Johnson from getting this position by encouraging Corrales to eliminate it.  Doc. 107-1 at
14    180.  When it became clear that Johnson would be hired, Arzoumanian instructed
15    Corrales to manage Johnson more closely than other operations managers and not to
16    accommodate Johnson's schedule.  *Id.*  Despite Arzoumanian's interference, Corrales
17    offered Johnson the position.  Doc. 96-3 at 14.

18    Johnson's time in Flagstaff was largely uneventful, with two exceptions.  First, on
19    one occasion, several employees complained to Arzoumanian that Johnson was sending
20    them home early and loading trucks himself in an effort to improve productivity.
21    Doc. 107-1 at 69-70.  Arzoumanian became very upset and sought to issue Johnson a
22    warning letter over the incident.  *Id.* at 70.  Corrales convinced Arzoumanian to let him
23    handle the situation, and no warning letter was issued.  *Id.*  Second, Johnson's station was
24    assigned an incorrect performance goal in the summer of 2012.  Corrales testified that the
25    engineering department made a clerical error in setting Johnson's performance goal, but
26    communicated this fact to Johnson within the hour and told him he would not be
27    responsible for achieving the incorrect goal.  Doc. 97-5 at 5. This account is corroborated
28    by John Alfonso, Manager for Operations Planning & Engineering, who submitted an

affidavit stating that the department made an "unintentional error," that the error was quickly corrected, and that Johnson was in no way penalized for the error.  Doc. 97-1 at 4, ¶ 9.  Johnson filed a charge of discrimination with the EEOC related to the incorrect performance goal.  Doc. 107-1 at 7, ¶ 27.

Shortly after Johnson accepted the Flagstaff position, a position opened at the Phoenix Airport Ramp.  Doc. 107-1 at 76.  Corrales intended to allow Johnson to apply for the position, but Johnson's offer letter for the Flagstaff position had provided that Johnson would be "ineligible to apply for other positions for a period of 24 months from your start date of November 1, 2010."  Doc. 96-3 at 14.  FedEx determined that this "time-and-commitment" requirement would not be waived to allow Johnson to apply for the Phoenix airport position.  Doc. 107-1 at 76-77.

In November 2011, FedEx did waive the time-and-commitment requirement to allow Johnson to apply for an open senior manager position at the ZSYA station in Phoenix.  Docs. 96-1 at 33-34; 107-1 at 258.  After the position went to another candidate (Robin Brower, an existing senior manager), Johnson filed an internal complaint asserting that Arzoumanian's refusal to interview him for the position constituted retaliation.  Doc. 96-3 at 1-6.  Arzoumanian defended his decision on the grounds that it was required by FedEx's Senior Manager Selection System ("SMSS").  Doc. 96-7 at 19.  The SMSS policy required managing directors to "[c]onsider all current Senior Managers before considering other candidates" for an open senior manager position.  Doc. 96-5 at 10.  Arzoumanian noted that Brower was the only existing senior manager to apply for the position and that eleven applicants situated similarly to Johnson were rejected. Doc. 96-7 at 19.  After reviewing Johnson's complaint, Jeff Walker, a managing director from another district, concluded that Arzoumanian's decision was consistent with the SMSS policy and did not constitute retaliation.  Doc. 97-9 at 5.  This decision was upheld by another managing director, the Vice President, and the Appeals Board.  Doc. 107-1 at 257-264.  Johnson subsequently filed a charge of discrimination with the EEOC related to this incident.  Doc. 107-1 at 7, ¶ 26.

In March 2013, Johnson applied for an open senior manager position at the MSCA station in Tempe.  Doc. 96-7 at 23.  Johnson was not interviewed, and the position went to Randy Gordon, an existing senior manager.  Docs. 96-1 at 38; 96-7 at 21; 107-1 at 7, ¶ 28.  Johnson filed an internal complaint challenging this decision.  Doc. 107-1 at 7, ¶ 29.

In a final attempt to return to the Phoenix area, Johnson passed a physical and obtained a commercial driver's license in February 2014.  Doc. 107-1 at 7.  He then attempted to apply for an entry-level courier position at the SCFA station in Scottsdale through his human resources representative, Gail Davis.  Docs. 109-1 at 5; 107-1 at 7, ¶ 32.  According to Ralph Valenzuela, who at the time was an operations manager at the SCFA station, the SCFA managers lied to Davis about the existence of open courier positions in order to prevent Johnson from obtaining one of these positions.  Doc. 107-1 at 294, ¶¶ 16-18.  Valenzuela avers that there were five open positions at the time, and all five were filled several weeks later, after Johnson retired.  *Id.*, ¶¶ 19-20.  Johnson filed a charge of discrimination with the EEOC based on this incident.  Doc. 107 at 8, ¶ 34.

Johnson elected to retire in February 2014, the month he turned 55 years old and qualified for early retirement.  Doc. 102-1 at 7.  In doing so, Johnson fulfilled a promise to his wife he would retire by 55 if he had not secured a position in Phoenix.  *Id.* at 11-12.  FedEx indicated that Johnson could continue working as an operations manager in Flagstaff, but he declined to do so.  Doc. 107-1 at 303-04.

## II.   Legal Standard.

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment is also appropriate against a

party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**III.   FedEx's Motion.**

  **A. Retaliation.**

   Title VII prohibits retaliation against an employee for opposing an unlawful employment practice or participating in a Title VII proceeding.  42 U.S.C. § 2000e-3(a). A successful retaliation claim must establish that (1) the employee engaged in a protected activity; (2) the employer took an adverse employment action against the employee; and (3) the employer would not have taken the adverse employment action but for a design to retaliate.  *Nilsson v. City of Mesa*, 503 F.3d 947, 953-54 (9th Cir. 2007); *see Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2535 (2013) (clarifying that employee must show "but for" causation).[4]  The filing of a charge of discrimination with the EEOC is a protected activity, as is the filing of an internal complaint alleging a Title VII violation. *See Bouman v. Block*, 940 F.2d 1211, 1228 (9th Cir. 1991)*; EEOC v. Go Daddy Software, Inc.*, 581 F.3d 951, 963 (9th Cir. 2009).

   FedEx does not dispute that Johnson engaged in protected activity by filing internal complaints in March 2009 and March 2013 and charges of discrimination in July 2009, March 2012, October 2012, and August 2014.  Instead, FedEx argues that Johnson has not shown that he was subjected to any adverse employment action as a result of his protected activities.  Doc. 98 at 6.

  **1. Adverse Employment Action.**

   Title VII's antiretaliation provision protects against "materially adverse"

---

[4] The same elements apply to a retaliation claim under 42 U.S.C. § 1981, *Ballard v. Portland Gen. Elec. Co.*, 293 F. App'x 448, 449 (9th Cir. 2008), or the ADEA, *O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756, 763 (9th Cir. 1996).

employment actions – actions that "might . . . dissuade[] a reasonable worker from making or supporting a charge of discrimination" – but not against "petty slights or minor annoyances that often take place at work and that all employees experience." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). The court's role at the summary judgment stage is limited to determining whether there is evidence in the record that would support a reasonable jury in finding that the action complained of was materially adverse. *See McBurnie v. City of Prescott*, 511 F. App'x 624, 625 (9th Cir. 2013) (whether retaliatory actions "were materially adverse under the particular circumstances . . . should be decided by a trier of fact"); *Rattigan v. Holder*, 643 F.3d 975, 986 (D.C. Cir. 2011) ("Whether a particular adverse action satisfied the materiality threshold is generally a jury question, with our role limited to determining whether, viewing the evidence in the light most favorable to the plaintiff, a reasonable jury could find the action materially adverse."), *vacated on other grounds*, No. 10-5014, 2011 WL 4101538 (D.C. Cir. Sept. 13, 2011). Where the evidence in the record is such that no reasonable jury could find an action to be materially adverse, the court may grant summary judgment for the defendant. *See, e.g., Sillars v. Nevada*, 385 F. App'x 669, 671 (9th Cir. 2010) (affirming grant of summary judgment because employee "presented no evidence that the position to which she was moved differed in any material way from the position she occupied prior to her complaints"). In determining whether a reasonable jury could find material adversity, the court must consider the context in which the action occurred. Because "[t]he real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships . . . an act that would be immaterial in some situations is material in others." *White*, 548 U.S. at 69 (citations and quotation marks omitted).

Johnson asserts that FedEx took the following adverse employment actions against him: (1) subjecting him to two unwarranted counselings in a 22-day period in the summer of 2009; (2) reducing his compensation after he moved to Texas in 2010; (3) attempting to eliminate the Flagstaff position after it became clear that he would be selected for it;

(4) instructing Jose Corrales to scrutinize Johnson and not to accommodate his schedule; (5) attempting to issue an unwarranted warning letter over the incident in which Johnson sent hourly employees home and loaded their trucks himself; (6) refusing to waive his time and commitment waiver to allow him to apply for the Phoenix airport position; (7) establishing incorrect performance goals for the Flagstaff station; (8) rejecting his application for two senior manager positions in the Phoenix area; (9) failing to apply a "posting exception" to allow him to transfer into the Phoenix area; and (10) lying to him regarding the availability of open driving positions in the Phoenix area.  Doc. 106 at 7, 12.

The third, fourth, and fifth incidents do not constitute adverse employment actions. FedEx did not, in fact, eliminate the Flagstaff position or issue an unwarranted warning letter.  Nor is there any evidence that FedEx actually refused to accommodate Johnson's schedule.  *See* Doc. 107-1 at 180 ("Corrales stated [Johnson] has not experienced any difficulty with his work schedule" despite Arzoumanian's instructions).  An employer's internal deliberations about employment actions that it might take are not actionable under the anti-retaliation provision because a reasonable worker cannot be dissuaded from engaging in protected activity by deliberations he knows nothing about.  *Cf. White*, 548 U.S. at 67 ("The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm.").  FedEx's deliberations may be relevant to the question whether the company had a retaliatory intent, but they do not in themselves constitute adverse employment actions.

Of the remaining incidents, FedEx disputes whether the first and seventh constitute adverse employment actions, but concedes that the others do.  Doc. 98 at 6-7.

### a.   Counselings.

To support its argument that counseling is not an adverse employment action, FedEx points to evidence that (1) the company's written policy states that counselings "are not disciplinary in nature" (Doc. 96-2 at 42); (2) counselings are not accompanied by any demotion or reduction in salary (*id.*); (3) Arzoumanian did not consider counselings

to be disciplinary (Doc. 96-4 at 16); (4) Arzoumanian initiated hundreds of counselings with his senior managers (Doc. 96-6 at 5-32); (5) Johnson received counselings from six other supervisors during his time at FedEx (Doc. 96-2 at 19-23, 29-30); and (6) the counselings did not actually deter Johnson from filing subsequent complaints (Doc. 107 at 8, ¶ 34).  In addition, FedEx cites a number of cases concluding that counseling is not an adverse employment action.  Doc. 109 at 4 (citations omitted).

Johnson counters with evidence that FedEx employees consider counselings to be disciplinary.  Specifically, he points to (1) the deposition of Bruce Chamberlain, a senior manager who testified that many FedEx employees view counseling as disciplinary and that it was "unusual" for a senior manager of Johnson's caliber to receive two counselings within a 22-day period (Doc. 107-1 at 57); (2) the deposition of Sue Apostoli, a senior manager who testified that she considers counseling to be disciplinary because "it's a permanent record . . . that you've done something that you shouldn't have" (*id.* at 149); and (3) the deposition of Colene Garcia, a former senior manager who testified that she, along with most managers at FedEx, considered counselings to be a form of discipline because "they could end up in a more serious form of discipline" and could be used to "mak[e] a paper trail to corner somebody or hold them accountable at some point in the future" (*id.* at 272).  This understanding is consistent with FedEx's written policy, which provides that counselings "may be considered as a factor when determining whether discipline (i.e. Warning Letter, Performance Reminder, termination, etc.) is warranted."  Doc. 96-2 at 42.  This understanding is also consistent with Arzoumanian's statement in the memorandum accompanying the July 6, 2009 counseling that "[f]urther instances of leadership failures will be considered conduct issues and will result in discipline up to and including termination."  Doc. 96-3 at 27.

Johnson has produced evidence from which a reasonable jury could conclude that the counselings initiated by Arzoumanian on June 15 and July 6, 2009 constituted adverse employment actions.  To be sure, FedEx's official policy is that counseling is non-disciplinary, and there is evidence in the record that counselings are frequent at

FedEx, viewed primarily as a communications tool, and rarely result in disciplinary action.  *See* Docs. 96-2 at 19-23, 29-30, 42; 96-6 at 5-32.  But there is also evidence that senior managers view counseling as a form of discipline, that it is unusual for a senior manager to receive multiple counselings within a short period of time, and that counselings could be used as a basis to take more serious action against an employee.  *See* Docs. 107-1 at 57, 149, 272; 96-2 at 42.  Although it is a close question, the Court concludes that a reasonable jury could find that Arzoumanian's initiation of two counselings within 22 days, along with his warning that future infractions might result in Johnson's termination, would have dissuaded a reasonable worker from filing future complaints.

Defendant's counterarguments are not persuasive.  The fact that Johnson was not in fact dissuaded from filing subsequent complaints is irrelevant: the standard for determining whether an employment action is materially adverse is an objective one, *White*, 548 U.S. at 68, which ensures that an employee will not be punished for being abnormally persistent in asserting his rights.  The fact that other courts have found in other contexts that counseling is not an adverse employment action is also irrelevant.  As the Supreme Court has explained, the materiality of an adverse employment action must be determined in light of the totality of the circumstances, and "an act that would be immaterial in some situations is material in others."  *White*, 548 U.S. at 69 (citations and quotation marks omitted).  Whether the counselings in this case were materially adverse is a question for the jury.

### b.    Incorrect Performance Goal.

FedEx argues that Johnson was not harmed by the assignment of an incorrect performance goal to his station in the summer of 2012.  Doc. 98 at 4.  FedEx points to the testimony of Jose Corrales and John Alfonso, which establishes that the engineering department made a clerical error in setting Johnson's performance goal, the error was quickly corrected, and Johnson was in no way penalized for this error.  Docs. 97-5 at 5; 97-1 at 4, ¶ 9.  Johnson responds that an employee who fails to achieve a performance

goal may receive a reduced bonus, but he does not point to any evidence that his bonus was reduced or that he ever believed it would be.  Doc. 106 at 8, n.5.  The unrebutted testimony shows that Johnson was informed almost immediately that an error had been made, and that he was never under the impression that he would be responsible for it.  No reasonable jury could conclude that this was a materially adverse employment action.

### 2.   Causation.

Johnson must show a causal link between his protected activity and the adverse employment actions he identifies.  The Supreme Court has held that Title VII retaliation claims "must be proved according to traditional principles of but-for causation."  *Nassar*, 133 S.Ct. at 2533.  To establish causation, an employee must provide evidence – either direct or circumstantial – that the individuals responsible for the adverse employment action *knew* about the protected activity and *intended* to retaliate based on it.  *See Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003) ("Raad must present evidence from which a reasonable trier of fact could conclude that the school principals who refused to hire her were aware that she had engaged in protected activity."); *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1112-15 (9th Cir. 2011) (employee must provide "direct or circumstantial evidence of discriminatory intent" on part of employer).

"[I]n some cases, causation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity."  *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002).  The Ninth Circuit has "made clear that a specified time period cannot be a mechanically applied criterion, and ha[s] cautioned against analyzing temporal proximity without regard to its factual setting."  *Fazeli v. Bank of Am., NA*, 525 F. App'x 570, 571 (9th Cir. 2013) (citations and internal quotation marks omitted).  Nonetheless, courts generally have "required temporal proximity of less than three months between the protected activity and the adverse employment action for the employee to establish causation based on timing alone."  *Mahoe v. Operating Eng'rs Local Union No. 3*, No. CIV. 13-00186 HG-BMK, 2014 WL 6685812, at *8 (D. Haw.

Nov. 25, 2014) (collecting cases).  This comports with Supreme Court precedent, which holds that the temporal proximity between the protected action and the adverse employment action must be "very close" to support an inference of causation, and that "[a]ction taken . . . 20 months later suggests, by itself, no causality at all."  *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (citations omitted).

Courts apply the *McDonnell Douglas* burden-shifting framework in determining whether an employee can establish causation.  *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1464-65 (9th Cir. 1994).  Under this framework, an employee must first make a prima facie showing of causation.  *Id.*  The burden then shifts to the employer to advance "legitimate, non-retaliatory reasons for any adverse actions taken" against the employee.  *Id.*  "This burden is one of production, not persuasion; it can involve no credibility assessment."  *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000) (citation and internal quotation marks omitted).  If the employer produces evidence suggesting a non-retaliatory reason for its action, the burden shifts again, and the employee must show that the proffered reasons are pretextual.  *Id.*  An employee may establish pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).  "To show pretext using circumstantial evidence, a plaintiff must put forward specific and substantial evidence challenging the credibility of the employer's motive."  *Vasquez v. Cty. of L.A.*, 349 F.3d 634, 642 (9th Cir. 2003).

FedEx argues that none of the adverse employment actions identified by Johnson were causally related to his protected activities.  Doc. 98 at 7-12.  In his response, Johnson fails to assert a causal connection between his protected activities and two of the adverse employment actions identified in the complaint – the reduction in his salary after his move to Texas and the denial of his application for a position at the Phoenix Airport Ramp.  *See* Doc. 106.  The Court will grant summary judgment for FedEx with respect to these incidents.  *Estate of Shapiro v. United States*, 634 F.3d 1055, 1060 (9th Cir. 2011)

(affirming grant of summary judgment with respect to abandoned claims). The Court considers the remaining incidents below.

### a.  Counselings.

The counselings initiated by Arzoumanian on June 15 and July 6, 2009, took place within four months of the filing of Johnson's complaint and within one month of Arzoumanian's comment to Johnson that filing an EEO was the biggest mistake he ever made. This constitutes a prima facie showing of causation, something FedEx does not contest. FedEx does assert that the counselings were initiated for legitimate business reasons, Doc. 98 at 8, but there is a factual dispute on this issue. Johnson avers that the counselings were unwarranted (Doc. 107-1 at 5, ¶ 12; *see id.* at 124), while Arzoumanian disagrees (Doc. 107-1 at 17). This factual dispute precludes summary judgment.

FedEx also notes that Arzoumanian did not make any discriminatory comments at the counselings, and argues that this fact somehow precludes a finding that the counselings were undertaken with retaliatory intent. Doc. 98 at 8-9. The Court does not agree. Employers often engage in retaliatory acts without explicitly labeling them as such – that is the reason the *McDonnell Douglas* framework provides employees with the opportunity to prove that an employer's facially legitimate reason for its action is pretextual. The counselings might have had the purpose and effect of deterring Johnson from engaging in protected conduct even if Arzoumanian did not make discriminatory comments at the counselings.

### b.  Failure to Promote.

Johnson contends that there is a causal link between his protected activity and FedEx's refusal to consider him for the senior manager positions at the ZSYA and MSCA stations. Doc. 106 at 10-11. FedEx responds that it had a legitimate, non-retaliatory business reason for refusing to consider Johnson: he was not a senior manager at the time he applied, and FedEx's SMSS policy required that existing senior managers be given first consideration for open senior manager positions. Doc. 98 at 9-10. Johnson replies that FedEx's justification is pretextual. Doc. 106 at 10-11.

Johnson has made a prima facie showing of causation.  The relevant decisions were made by Arzoumanian, and he clearly had knowledge of Johnson's protected activities.  There is also circumstantial evidence that he intended to retaliate against Johnson.  *See, e.g.*, Docs. 96-1 at 30; 107-1 at 180.

The Court further concludes that FedEx has advanced a legitimate, non-retaliatory reason for its refusal to consider Johnson.  FedEx has produced the written policy (the SMSS policy) that provides that managing directors must "[c]onsider all current Senior Managers before considering other candidates" for an open senior manager position. Doc. 96-5 at 10.  FedEx also points to evidence that managing directors were informed that the policy was "not optional" and that "[f]ailure to follow the SMSS process is a violation, and will place the corporation and [the managing director] at risk." *Id.* at 6-7.

The Court finds that there is a factual dispute as to whether the application of the SMSS policy was pretextual.  Johnson produces evidence that managing directors were permitted to treat existing operations managers with senior manager experience as senior managers for purposes of the policy.  Doc. 107-1 at 240, 246.  Since Johnson was an existing operations manager with senior manager experience at the time of his application, there is a factual dispute as to whether, under the SMSS policy, Arzoumanian could have considered him alongside Brower.

Johnson also produces evidence that (1) Arzoumanian did not comply with all aspects of the SMSS policy in selecting Brower (Doc. 107-1 at 263); (2) in one case in 2012, an existing senior manager was rejected for a senior manager position, despite having been the only existing senior manager to apply (Doc. 107-1 at 254); and (3) no managing director was ever disciplined for failing to comply with the SMSS (Doc. 107-1 at 247).  A reasonable jury could conclude that FedEx's explanation for its decision not to consider Johnson "is unworthy of credence," *Burdine*, 450 U.S. at 256, either because the SMSS policy allowed Arzoumanian to consider Johnson or because the SMSS policy was not actually mandatory.

1

### c.     Failure to Apply Posting Exception.

2      Johnson produces evidence that (1) FedEx policy allows a senior manager, with

3  approval of his or her managing director and the human resources department, to laterally

4  transfer an employee to an open position that is not posted as vacant/open (Doc. 107-1 at

5  88, 98, 174); (2) Arzoumanian never looked into a posting exception for Johnson (*id.* at

6  27); (3) FedEx assured Johnson that it would review operations manager positions in the

7  Phoenix area and could have placed him in such a position using a posting exception (*id.*

8  at 220-21); and (4) there were many open operation manager positions in the Phoenix

9  area between 2009 and 2013 (Doc. 102-3 at 3, ¶ 9); but (5) no posting exception was ever

10  applied to allow Johnson to transfer to one of these positions.  FedEx's decision not to

11  apply a posting exception to relocate Johnson to Phoenix occurred during a period in

12  which he undertook a number of protected activities.  The Court concludes that Johnson

13  has made a prima facie showing based on the temporal proximity.  *See Villiarimo*, 281

14  F.3d at 1065.

15      FedEx has produced evidence showing that its failure to apply a posting exception

16  was justified by legitimate, non-retaliatory reasons.  FedEx provides evidence that (1) a

17  posting exception is applied only in "extremely rare" cases where there are "compelling

18  operational reason[s]" (Doc. 109-3 at 7-8); and (2) a posting exception is not typically

19  used simply to relocate an employee for his convenience (Doc. 109-4 at 8); and (3) the

20  posting exception policy is not used "as a reward or consolation remedy for an employee

21  who is unsuccessful in challenging a promotion or selection decision" (Doc. 109-5 at 3,

22  ¶ 6).[5]  This evidence is sufficient to suggest that FedEx has a general policy of limiting

23  the use of posting exceptions to cases involving compelling operational concerns.

24      The Court concludes that there is a factual dispute as to whether the application of

25  this policy was pretextual.  Johnson has produced evidence that posting exceptions have

26  been used on numerous occasions in the Canyon District and have been approved by the

27

28      [5] FedEx's reply argues that it is relevant that Johnson never applied for a posting exception.  Doc. 109 at 7.  But FedEx has not produced evidence indicating that an employee needs to apply to be granted an exception.

- 15 -

same decision makers who decided not to grant a posting exception to Johnson (Doc. 107 at 46, 289-90, 294-95 (¶¶ 21-23)).  FedEx does not explain how Johnson's situation differed from those in which the company used posting exceptions.  Thus, there is a factual dispute as to whether FedEx's failure to use a posting exception in Johnson's case was consistent with, or a departure from, its general practice in similar cases.[6]

### d. Driving Positions.

Johnson presents unrebutted evidence that FedEx lied to him about the existence of five open courier positions at the SCFA station.  Doc. 107-1 at 7 (¶¶ 32-33), 294 (¶¶ 16-20).  FedEx does not identify any legitimate, non-retaliatory reason for this conduct.  *See* Doc. 109 at 11.  A reasonable jury could conclude that FedEx lied about the existence of these open positions in retaliation for Johnson's protected activity.

### B. Constructive Discharge.

"[C]onstructive discharge occurs when the working conditions deteriorate, as a result of discrimination, to the point that they become sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer." *Poland v. Chertoff*, 494 F.3d 1174, 1184 (9th Cir. 2007) (quoting *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000)).  The Ninth Circuit "set[s] the bar high for a claim of constructive discharge because federal antidiscrimination policies are better served when the employee and employer attack discrimination within their existing employment relationship, rather than when the employee walks away and then later litigates whether his employment situation was intolerable." *Id.*  The standard for proving constructive discharge is even more demanding than the standard for proving hostile work environment. *Brooks*, 229 F.3d at 930.

"Whether working conditions were so intolerable and discriminatory as to justify a

---

[6] FedEx objects that Johnson's amended complaint does allege that FedEx retaliated by failing to apply a posting exception.  Doc. 109 at 6.  But Johnson clearly pled a retaliation claim and FedEx does not argue that it would be prejudiced by Johnson's presentation of this particular argument.

reasonable employee's decision to resign is normally a factual question for the jury." *Wallace v. City of San Diego*, 479 F.3d 616, 626 (9th Cir. 2007) (citation and internal quotation marks omitted).   But where the employee's "decision to resign was unreasonable as a matter of law" or the undisputed evidence shows that the employee resigned for personal rather than workplace reasons, summary judgment will be granted for the employer.   *Lawson v. Washington*, 296 F.3d 799, 805 (9th Cir. 2002) (quoting *King v. AC & R Advertising*, 65 F.3d 764, 767 (9th Cir. 1995)).

Johnson contends that FedEx's "continuous pattern of retaliatory treatment" created a workplace that was so intolerable that a reasonable person would have felt compelled to resign.   Doc. 106 at 17.   No reasonable jury could agree.   There is no evidence that Johnson experienced any significant workplace problems between September 2010, when he began working in Flagstaff, and February 2014, when he retired.[7]   To the contrary, Johnson testified that he had no problems with his supervisor in Flagstaff and that he had "excellent performance reviews" and "no issues" in this position.   Doc. 96-2 at 13.   The undisputed evidence also shows that Johnson decision to retire in February 2014 was motivated in large part by personal considerations, including his promise to his wife that he would retire at age of 55 unless he first obtained a position in Phoenix, and the fact that he became eligible to receive his pension that month. Doc. 102-1 at 11-12, 39, 41-42.

To be sure, the situation was far from ideal because Johnson was separated from his family in the Phoenix area and was repeatedly denied a promotion or transfer.   But neither separation from family nor repeated inability to secure a transfer or promotion is sufficiently "extraordinary and egregious" to constitute constructive discharge.   *See Poland*, 494 F.3d at 1184 (cross-country transfer to a new, non-supervisory position did not amount to constructive discharge); *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001) (employer's repeated denial of promotions and transfer opportunities did

---

[7] As explained above, the incorrect performance goal was not materially adverse.

not amount to constructive discharge).  In sum, there is no evidence to support a finding that Johnson's working conditions in Flagstaff were "extraordinary and egregious," and FedEx is entitled to summary judgment on Johnson's constructive discharge claim.

**IV.   Johnson's Motion.**

An employee who is discharged in violation of Title VII or the ADEA has a duty to mitigate damages.  *See Ford Motor Co. v. EEOC*, 458 U.S. 219, 231 (1982) (citing 42 U.S.C. § 2000e-5(g))*; Maxfield v. Sinclair Int'l*, 766 F.2d 788, 794 n.5 (3d Cir. 1985) ("courts have held that the ADEA . . . require[s] mitigation of damages") (collecting cases).  Although the employee is not required to "go into another line of work, accept a demotion, or take a demeaning position," *Ford*, 458 U.S. at 231, he must exercise "reasonable diligence" in pursuing "substantially equivalent work." *Sangster v. United Air Lines, Inc.*, 633 F.2d 864, 868 (9th Cir. 1980) (citation omitted).  The employer bears the burden of showing that there were substantially equivalent jobs available and that the employee failed to use reasonable diligence in pursuing them. *Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1497 (9th Cir. 1995).

Johnson contends that summary judgment is appropriate on FedEx's failure-to-mitigate defense because FedEx has not produced any evidence showing that there was substantially equivalent work available or that Johnson failed to exercise reasonable diligence in pursuing it.  Doc. 99.  FedEx counters that it need not produce such evidence because Johnson's deposition testimony establishes that he intended to retire upon turning 55 and did in fact do so.  Doc. 101.  It views this evidence as precluding any argument that Johnson exercised reasonable diligence in pursuing employment after the end of his employment with FedEx.  *Id.* at 2-3.  In addition, FedEx argues that substantially equivalent work was available because Johnson could have remained in the position he retired from or else applied for another operations manager position with FedEx. *Id.*

FedEx has adduced evidence from which a reasonable jury could conclude that Johnson failed to exercise reasonable diligence in pursuing new employment.  Johnson

indicated in his deposition that (1) he qualified for early retirement when he turned 55 in February 2014; (2) he promised his wife that he would retire at the age of 55 if he had not secured a position in Phoenix by that time; (3) he informed other FedEx employees that he intended to retire at 55 unless he secured a position in Phoenix; (4) he signed documents in January and February 2013 indicating his intent to retire the following year; (5) he did retire in February 2014; and (6) he is not currently employed.  Doc. 102-1 at 11-12, 39, 41-42.  Based on this evidence, a reasonable jury could conclude that Johnson has not made reasonable efforts to mitigate his damages because he has retired and does not intend to come out of retirement.

FedEx has also produced evidence from which a reasonable jury could conclude that substantially equivalent work was available around the time Johnson retired.  FedEx produces evidence that Johnson was given the opportunity to remain in the Flagstaff position.  Doc. 107-1 at 303-04.  In addition, FedEx identifies two human resources employees who can testify regarding other job openings at FedEx that existed before and after Johnson's retirement.  *Id.* at 6-7.  Because FedEx has produced sufficient evidence from which a reasonable jury could conclude both that substantially equivalent work was available and that Johnson failed to exercise reasonable diligence in pursuing it, Johnson's motion will be denied.

The Court is not certain the failure-to-mitigate defense in relevant in light of summary judgment on Johnson's constructive discharge claim.  The parties should address this issue in their proposed final pretrial order.

**IT IS ORDERED:**

1.   FedEx's motion for summary judgment (Doc. 95) is **granted** with respect to Johnson's constructive discharge claim and with respect to the third, fourth, fifth, sixth, and seventh theories of retaliation listed on page 7 of this order.

2.   FedEx's motion is otherwise **denied**.

3.   Johnson's motion for summary judgment (Doc. 99) is **denied**.

- 19 -

4.      The Court will hold a telephone conference on **May 11, 2016 at 4:30 p.m.** to set a firm trial date.  The Court will schedule a final pretrial conference by separate order.

Dated this 21st day of April, 2016.

David G. Campbell
United States District Judge